[Civ. No. 15310.   First Dist., Div. One.   Mar. 3, 1953.]

MACMILLAN PETROLEUM CORPORATION, Appellant,
v. CLYDE A. GRIFFIN, Defendant; GEORGE H.
JOVICK, Respondent.

Robert E. Hatch and Frederick W. Mahl, Jr., for Appellant.

Courtney L. Moore for Respondent.

WOOD (Fred B.), J.—Plaintiff has appealed from an order of May 25, 1951, denying its application under section 685 of the Code of Civil Procedure for leave to enforce a judgment of May 17, 1934, against defendant George H. Jovick.

The original plaintiff in the action was Mileage Gasoline Company, a Nevada corporation doing business in California. In 1937 Mileage Company transferred all of its assets to Macmillan Petroleum Corporation. Mileage Company then surrendered its license and authority to conduct business in California and voluntarily dissolved December 24, 1937.

Macmillan Petroleum Corporation did not notify Jovick, the judgment debtor, of this transfer, nor did it inform Mr. Mahl or Mr. Hatch, the attorneys who had represented Mileage Company in this action, that the transfer had been made or that Mileage Company had been dissolved. It did nothing whatsoever looking toward enforcement of the 1934 judgment or discovery of assets of the debtor until Mr. Mahl in the latter part of 1947 informed M. P. Macmillan, vice president of Macmillan Corporation, formerly president of the Mileage Company, that there was some possibility of collecting the judgment and asked Mr. Macmillan if he would authorize the expense that would be involved. Macmillan told Mahl he would authorize it but did not tell Mahl in what capacity he was acting.

Mr. Hatch then applied to the trial court, in the name of and on behalf of Mileage Company for leave to enforce the judgment. An order granting such leave was made December 19, 1947. Subsequently, defendant Jovick discovered and presented proof that Mileage Company had been dissolved. It appears that until then Mr. Hatch did not learn of the assignment to Macmillan nor of the dissolution of Mileage and that until then he acted as if no such dissolution or

transfer had occurred. Hatch applied for a substitution of parties and on August 21, 1948, Macmillan Corporation was substituted for Mileage Company as plaintiff in the action.

December 3, 1948, the trial court found and declared the orders of December 19, 1947, and August 21, 1948, void. Upon Macmillan's appeal therefrom we held the order for substitution valid and the order granting Mileage leave to enforce the judgment void. (99 Cal.App.2d 523 [222 P.2d 69].) In so holding, we said: "Nothing herein stated will prevent an application by Macmillan to the superior court for an order enforcing the judgment. On such application the assignment of the judgment by Mileage prior to dissolution, as well as any fact showing diligence on the part of Macmillan after such assignment, may be shown to the superior court." (P. 532.) Subsequently, Macmillan did make such an application. The order denying that application is the subject of the present appeal.

■ The facts which we have narrated, gleaned from the affidavits used upon the hearing of Macmillan's application for leave to enforce the judgment, and the inferences that reasonably may be drawn from those facts, would support a finding that the present judgment creditor exercised no diligence at all, until 1947, in enforcing the judgment. Those facts and inferences would support a finding of utter disregard and abandonment of the judgment until, ten years later, an officer of Macmillan (president of Mileage during its existence) was informed that there was some possibility of collecting.

In implying this finding by the trial court, we are aided and supported by the written opinion, properly included in the record on appeal, which the Honorable Edward Molkenbuhr filed the very day that he caused the order of denial to be entered in the minutes. In this opinion, he said: "There can be no question that there was a complete failure on the part of Macmillan Corp. to show any diligence to enforce the judgment until after Mileage Co. filed its application for execution to issue in 1947, because counsel who prepared the affidavits on behalf of Mileage did not know at that time that Mileage was completely defunct since December of 1940. The affidavits did not show one iota of diligence on the part of plaintiff, Macmillan Corp. In my opinion, it was the duty of Macmillan Corp. to at least make out a prima facie showing of diligence at some time before it is entitled to an execution; it is charged with the same duty as Mileage was, namely, to make some investigation over the years concerning the collect-

ibility of the judgment. Appellant's argument that defendant did not aver whether he had leviable asests or whether he concealed his assets is irrelevant. The statute requires that plaintiff show that it exercised due diligence. Perhaps the reason for not so doing was that Macmillan Corp. had forgotten all about the judgment and was not interested in it prior to a communication from the Los Angeles attorney in 1947.''

■ That such use may be made of an opinion clearly appears from *Taylor* v. *George*, 34 Cal.2d 552 [212 P.2d 505]. Having concluded that the judgment which the trial court had rendered was in itself an implied determination of a certain ultimate fact, the Supreme Court said: ''The written opinion of the trial court, properly included in the record on appeal (rule 5(a), Rules on Appeal), further supports our conclusion on that question.'' (P. 556.)

■ Indeed, the circumstance that the trial court's determination that Macmillan exercised no diligence prior to 1947 was expressed in a document labeled ''Opinion,'' does not necessarily prevent it from qualifying as an express finding.

This finding, whether properly deemed an express or an implied finding, is supported by the evidence. It in turn supports the order of denial, negatives any abuse of discretion by the trial judge, and compels affirmance of the order.

Macmillan claims the record shows that Jovick had no assets during the first five-year period and, therefore, Macmillan was excused from making any search during that period upon the ground that the law does not require the doing of an idle act. This claim does not come with the best of grace from a creditor who, as the trial court found, virtually abandoned the judgment as soon as acquired in 1937 and who, after 10 years of complete inattention, utter disregard and total inaction, was the recipient of unsought information that Jovick had leviable assets. Moreover, the record is not such that a reviewing court can say as a matter of law that Jovick had no assets during any of that first five-year period. Proof of such lack of assets, Macmillan predicates upon a statement in an affidavit by Mr. Hatch that he ''is informed and believes and thereupon alleges that within all of said five year period the said Jovick was without any assets or means that could have been subjected to such process,'' coupled with a failure by Jovick to deny that statement. We do not see that such failure to deny amounted to an admission by Jovick. We are dealing with evidence

to prove facts, not with pleadings to frame issues. Jovick's mere failure to testify on the subject added nothing to the weight of Mr. Hatch's statement, which was indeed slight, made as it was upon information and belief. That statement was predicated principally, it would appear, upon the search of San Francisco records made by Mr. Hatch in the belief he was acting for Macmillan's assignor, Mileage Gasoline Company. The record discloses that other persons discovered considerable assets belonging to Jovick in San Luis Obispo County about 1947 and in Contra Costa in 1948, in addition to the San Francisco properties brought to Mr. Hatch's attention in 1947. There is nothing in the record that would require the trial court to conclude that Jovick suddenly acquired those assets. It happens that the judgment here involved grew out of a transaction which took place in Alameda County. There is no indication that either Macmillan or its predecessor, Mileage Gasoline, conducted any search in that county. The only evidence of a search in Alameda County is in an affidavit by one Rench, another creditor of Jovick, who said that during the period 1941 to 1948 he diligently searched the records of Alameda, Contra Costa, San Francisco and San Mateo Counties and was unable to locate any real property in the name of Jovick. But that is a very general statement. Rench did not specify what records he searched, nor how frequently he examined them. Looking at the whole record, we cannot say as a matter of law that Jovick was without assets during the first five-year period or that the trial court committed an abuse of discretion when it denied Macmillan's application for leave to enforce the judgment.

In so deciding, we do not undertake to pass upon the question, to which the parties have given considerable attention, whether or not the judgment creditor must show diligence beyond the five-year period immediately following rendition of the judgment. We rest our decision upon Macmillan's want of diligence after it acquired the judgment and before the five-year period expired. Its continued indifference and inaction for another eight years (until 1947) lend support to the view that its indifference, inaction, and lack of diligence were complete and absolute during the earlier period.

Nor do we find it necessary to determine whether the Mileage Co. showed due diligence during the time it owned this judgment. Its diligence, if any, would inure to its successor, the Macmillan Corporation, but is of no significance

in view of Macmillan's subsequent conduct. After the transfer, none of the activities of Mileage, or of Mr. Mahl or Mr. Hatch in the name and on behalf of Mileage, may be invoked as tending to show diligence upon the part of Macmillan.

■ As to the applicable provisions of law, we predicate our decision upon section 685 of the Code of Civil Procedure, interpreted in *Butcher* v. *Brouwer*, 21 Cal.2d 354 [132 P.2d 205], "as authorizing the [trial] court to give a creditor an execution only if, during the five years following entry of judgment, he exercised due diligence in locating and levying upon property owned by the debtor, or in following available information to the point where a reasonable person would conclude that there was no property subject to levy within that time. ■ And even though the creditor may have satisfied the court that he has proceeded with due diligence to enforce his judgment under section 681, the court may still deny him its process if the debtor shows circumstances occurring subsequent to the five-year period which, in the exercise of a sound discretion, it should conclude that he is not now entitled to collect his judgment." (P. 358.) "Whether or not a creditor has exercised due diligence is for the trial court to determine in its discretion, and its determination will not be disturbed in the absence of a clear abuse of discretion. [Citations.]" (*Di Corpo* v. *Di Corpo*, 33 Cal.2d 195, 200 [200 P.2d 529].)

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 2, 1953, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1953.